❐ Original        ❐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with the cellular telephone number assigned 704-576-8987, as further described in Attachment A | ) |

Case No. 25-805M(NJ)

Matter No. 2024R00258

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 2/17/2025_____ *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____.
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❐ for _____ days *(not to exceed 30)*    ❐ until, the facts justifying, the later specific date of _____.

Date and time issued: 2/3/2025 @ 3:13 p.m._____

*Judge's signature*

City and state:   Milwaukee, WI_____          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2024R258**

1.      Records and information associated with the cellular devices assigned call numbers **704-576-8987** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of **Verizon**, (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.      The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2024R258**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from July 14, 2024, to September 26, 2024:

      i. Names (including subscriber names, usernames, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long-distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phones, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.   Information to be Seized by the Government**

3

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the cellular<br>telephone number assigned 704-576-8987, as<br>further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. 25-805M(NJ)

Matter No. 2024R00258

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Possession with the intent to distribute controlled substances, and Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Rice, FBI SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: 2/3/2025

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, which have been committed by O'Brien FRENCH, Karina BOOKER and other identified and unidentified subjects during the period of May 1, 2024 to December 1, 2024.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

4

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**MATTER NUMBER 2024R258**

I, Robert Rice, a Special Agent with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

**I.      INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for records and information associated with the following cellular telephone number **704-576-8987** (the "Target Cell Phone"), whose service provider is Verizon ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Provider to disclose to the government subscriber/call detail information and historical location data (including cell-site data) maintained by the Provider as further described in Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I have been employed with the Federal Bureau of Investigation (FBI) as a Special Agent since February 24, 2004.  I am currently assigned to the Milwaukee Area Safe Streets Task Force in Racine, Wisconsin.  Throughout my career, I have been assigned to Safe Streets Gang Task Forces, HIDTA Drug and Gang Task Forces and Violent Crime and Robbery Task Forces in both the Milwaukee and Boston Field Offices of the FBI. I have conducted numerous state and federal investigations related to both violent incident crime and drug trafficking.

Page 1

4.	I have received extensive training related to both violent incident crime and narcotics trafficking including the use of cell phone analytics in both types of investigations.

5.	I have conducted investigations ranging from armed robberies and kidnappings to long term narcotics trafficking investigations by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

6.	I have also investigated drug trafficking offenses at the state and federal level, including violations of  Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

7.	I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel,

Page 2

corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.     I have participated in the execution of numerous search warrants in which narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different methods used to conduct narcotics trafficking and different type of controlled substances. I have had a variety of formal, informal, and on the job training in the investigation of illegal drug trafficking. Additionally, I am familiar with street name(s) of controlled substances and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

9.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

10.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by O'Brien FRENCH, Karina BOOKER and other identified and

Page 3

unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.    PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

12.    In June of 2024, the Milwaukee Area Safe Streets Task Force – Racine (MASSTF-R) initiated a narcotics trafficking investigation into Karina BOOKER, DOB XX/XX/1994. Previous investigation by the MASSTF-R indicated that BOOKER was trafficking methamphetamine and fentanyl pills in the Racine area. During the investigation the MASSTF-R developed a Confidential Human Source (CHS) 1 that had direct knowledge of BOOKER's drug trafficking activity.  CHS 1 was not in a position to conduct the controlled purchases but was able to schedule and coordinate the deals for a CHS 2 who conducted the controlled narcotics purchases from BOOKER.

13.    CHS 1 has supplied information about ongoing criminal activity to the MASSTF-R, which has been corroborated by independent law enforcement investigation including physical surveillance. CHS 1 has prior felony convictions for possession of a firearm by felon, manufacture/deliver THC, possession with intent to deliver THC, and conspiracy to possess with intent to distribute cocaine and crack cocaine. CHS 1 has prior misdemeanor convictions for possession of THC. CHS 1 cooperated with law enforcement for consideration on a pending felony drug offense and for monetary consideration; however, it was later determined CHS 1 was actively engaged in the distribution of controlled substances without law enforcement approval or knowledge.

14.    CHS 2 is truthful and accurate as CHS 2 has supplied information about ongoing criminal activity to the MASSTF-R, which has been corroborated by independent law enforcement

Page 4

investigation including physical surveillance. CHS 2 has prior felony convictions for armed robbery, escape from custody, possession of a firearm by felon, first degree recklessly endangering safety, battery or threat to a witness, stalking – use of a dangerous weapon, substantial battery – intend to do bodily harm, possession with intent to distribute heroin g, possession with intent to distribute cocaine, hallucinogen sell – distribution, controlled substance sell – distribute or dispense. CHS 2 has prior misdemeanor convictions for bail jumping, operating while revoked, and possession of THC. CHS 2 has previously cooperated with law enforcement and is currently cooperating for consideration on his pending felony drug charges.

**B. CONTROLLED BUYS**

15.     Generally, during the below listed controlled buys of controlled substances the CHS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provided pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance. The target was identified by the CHS through photographs and verified by investigators through department of transportation photographs, booking photos, and/or social media.

**a. Controlled Buy June 27, 2024 – BOOKER**

16.     On June 27, 2024, CHS 2 purchased approximately two pounds of suspected methamphetamine from BOOKER for $5,600 in the Eastern District of Wisconsin. The evidence

tested positive for methamphetamine at the Drug Enforcement Administrative (DEA) Crime Laboratory which provided a total weight of 871.3 grams.

**b. Controlled Buy July 11, 2024 – BOOKER**

17.     On July 11, 2024, CHS 2 purchased approximately 2.2 pounds of methamphetamine from BOOKER for $5,600 in the Eastern District of Wisconsin. The evidence tested positive for methamphetamine at the DEA Crime Laboratory which provided a total weight of 872.9 grams.

**c. Controlled Buy August 8, 2024 – BOOKER**

18.     On August 8, 2024, CHS 2 arranged to purchase 1500 fentanyl pills from BOOKER for $7,500 in the Eastern District of Wisconsin. CHS 2 met and exchanged the cash for the suspected fentanyl pills. After the deal had been completed, case agents realized that BOOKER had only provided 503 pills. CHS 1 contacted BOOKER and arranged to obtain the balance of the pills at a later date. The evidence tested positive for fentanyl at the DEA Crime Laboratory which provided a weight of 53.6 grams.

**d. Controlled Buy September 12, 2024 – BOOKER**

19.     On September 12, 2024, CHS 2 met with BOOKER and received 963 fentanyl pills, which was the remaining balance from the August 8, 2024 controlled buy. The evidence tested positive for fentanyl at the DEA Crime Laboratory which provided a weight of 103.7 grams.

**C. DRUG PARCELS**

20.     During the investigation, case agents believed BOOKER was receiving drugs parcels to XX04 Manhattan Drive, Racine, Wisconsin. On July 29, 2024, United States Postal Inspector Service (USPIS) intercepted a parcel being sent to XX04 Manhattan Drive, Racine, Wisconsin. The parcel was postmarked with an address from Phoenix, Arizona. Both the names

of the sender an addressee were determined to be fictitious. On July 29, 2024, a federal search warrant for the parcel was issued by Magistrate Judge William E. Duffin. During the search of the parcel, investigators discovered two paint cans inside of a five-gallon Home Depot bucket and a green leafy substance, which field tested positive for marijuana. Based on the investigation, case agents believed the parcel likely contained additional controlled substance, but an unknown individuals may have taken the controlled substances before the parcel arrived in the Eastern District of Wisconsin.

### D. IDENTIFICATION OF BOOKER'S DRUG SOURCE AND THE TARGET CELL PHONE

21.     As part of the investigation into BOOKER's drug trafficking, case agents identified O'Brien FRENCH (DOB XX/XX/993) as her possible narcotics supplier.

22.     CHS 1 identified O'BRIEN FRENCH as a narcotics supplier to BOOKER. CHS 1 advised that FRENCH moved to Arizona years ago and developed contacts with narcotics suppliers in Mexico to include cartel connections. CHS 1 said FRENCH is currently incarcerated in Arizona but has maintained his distributor level narcotics supply through intermediaries such as BOOKER. CHS 1 stated FRENCH uses telephone number **(704) 576-8987 (Target Cell Phone)** to engage in drug trafficking.

23.     At the direction of case agents, CHS 2 contacted FRENCH via text message at **(704) 576-8987 (Target Cell Phone)**.

24.     At the direction of case agents, CHS 2 and **(704) 576-8987 (Target Cell Phone)** communicated over several text messages that were sent between September 18, 2024 through September 20, 2024.

25.     On September 23, 2024, CHS 2 conducted a consensually recorded telephone call with **(704) 576-8987 (Target Cell Phone).**  During the recorded call, the user of **(704) 576-8987 (Target Cell Phone),** believed to be FRENCH, and CHS 2 discussed the specifics regarding amounts and prices for fentanyl pills.  This was in anticipation of CHS 2 working directly with the user of **(704) 576-8987 (Target Cell Phone),** believed to be FRENCH, to obtain large amounts of fentanyl pills.

26.     On September 25, 2024, BOOKER provided a *Mirandized* interviewed to case agents. BOOKER identified FRENCH as her source of supply for fentanyl pills.  BOOKER stated she had a different source of supply for methamphetamine. BOOKER was shown a booking photograph of O'BRIEN FRENCH, (DOB XX/XX/1993). BOOKER identified the individual in the booking photograph as FRENCH and said he was her source of supply for fentanyl pills. BOOKER explained that FRENCH would "front" her the narcotics and she would reimburse FRENCH later through Apple Pay or Zelle as BOOKER was incarcerated in Arizona.  BOOKER advised that FRENCH had access to cell phone despite being incarcerated. BOOKER received the fentanyl pills through the mail at several of her residences in 2024. BOOKER advised that she lived at XX18 Northwestern Avenue, #X, Racine, Wisconsin in March of 2024. BOOKER further advised that she lived at XX04 Manhattan Drive, Racine, Wisconsin starting on June 21, 2024.

27.     BOOKER advised that she had received the following deliveries of fentanyl pills through the United States Postal Service:

   a.   March 2024 (unidentified day), two four-pound boxes of fentanyl pills;
   b.   July 2, 2024, one six-pound box of fentanyl pills containing approximately 5,000 pills;
   c.   September 3, 2024, one three-pound box of fentanyl pills.

d. A fourth delivery was lost in the mail but BOOKER did not provide specifics regarding the date it was lost or the address it was being shipped to.[1]

28. Case agents were assisted by the USPIS to locate possible drug parcel received by BOOKER at her previously address of XX04 Manhattan Drive, Racine, Wisconsin.

29. Case agents located the following parcel that would be consistent with drug parcel based on USPIS training and experience:

a. On June 21, 2024, a parcel which weighed nine-pounds and two-ounces was postmarked in Tolleson, Arizona. The package was delivered to XX04 Manhattan Drive on June 24, 2024; and
b. On July 2, 2024, a parcel which weighed six-pounds and three-ounces was postmarked in Tolleson, Arizona. The package was delivered to XX04 Manhattan Drive on July 8, 2024.

30. On January 27, 2025, case agents reviewed BOOKER's telephone pursuant to a federal search warrant. Case agents located the telephone number **(704) 576-8987 (Target Cell Phone)** saved in the contacts section of BOOKER's cell phone. The Target Cell Phone was saved under the contact "Obrien."

31. Case agents reviewed the Arizona Department of Corrections (DOC) online Inmate Data Search. The data search revealed that O'Brien FRENCH, (DOB XX/XX/1993), is currently incarcerated at the La Palma Correctional Center, located at 5501 North La Palma Road, Eloy, Arizona. A review of the National Crime Information Center (NCIC) database, revealed that FRENCH received a felony conviction for "Dangerous Drug Transportation and/or Sell on November 1, 2022 in Maricopa County Superior Court. FRENCH is currently serving a 78 month prison sentence.

---

[1] Case agents believes this parcel likely relates to the parcel that was intercepted by USPIS on July 29, 2024.

32.     The Arizona DOC database also revealed that FRENCH received a "disciplinary violation" on November 11, 2024 for Possession of a Communication Device.

### E.  Additional information as to TARGET CELL PHONES

33.     On January 21, 2025, case agents queried telephone (**704) 576-8987 (Target Cell Phone)** via a law enforcement database, which identified the Service Provider as Verizon.

34.     On January 28, 2025, Verizon Security Subpoena Compliance identified the subscriber of the (**704) 576-8987 (Target Cell Phone)** as BILL MANOS. Telephone (**704) 576-8987 (Target Cell Phone)** was resold to Tracfone.  Telephone (**704) 576-8987 (Target Cell Phone)** was activated on July 14, 2024 and deactivated on September 26, 2024.

### III.     JURISDICTION

35.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### IV.     REQUEST FOR SEARCH WARRANT

36.     The facts set forth above show that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will contain evidence of federal crimes.

37.     The facts described above give rise to probable cause that the Target Cell Phone was involved in distributing controlled substances by O'Brien FRENCH, Karina BOOKER and other members of the drug trafficking organization.

38.     As further set forth in Attachment B, your affiant is requesting subscriber/call detail information and historical location data (including cell-site data) maintained by the Service

Provider for the Account listed in Attachment A for the date range from July 14, 2024, to September 26, 2024.

39.     The requested data will allow investigators to compare past locations of the phone associated with the Target Cell Phone and will assist in determining whether and to what extent members of the DTO were in geographical proximity to locations relevant to the investigation of their narcotics distribution, include the prison in Arizona.

40.     Further, call detail records for the Target Cell Phone will assist investigators in documenting communications between the Target Cell Phone and accomplices or co-conspirators during the time period of the drug trafficking conduct and may reveal additional investigative leads or suspects.

41.     In my training and experience, I have learned that the Service Provider listed in Attachment A is a wireless provider that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

42.     Based on my training and experience, I know that wireless providers can collect cell-site data about the Account listed in Attachment A.  I also know that the Service Provider typically collects and retains cell-site data pertaining to cellular phones to which it provides service in its normal course of business in order to use this information for various business-related purposes.

43.     Based on my training and experience, I know that the Service Provider also collects more precise historical location information associated with cellular phones, which may be referred to as Per Call Measurement Data (PCMD), Range to Tower or Real-Time Tool (RTT) data, NELOS records, or Timing Advance Data (TrueCall).  This data uses GPS or other technology to estimate an approximate location range of a cellular phone that is more precise than typical cell-site data.

44.     Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Account's user or users and may assist in the identification of co-conspirators and/or victims.

## V.     AUTHORIZATION REQUEST

45.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

46.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served electronically on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2024R258**

1.      Records and information associated with the cellular devices assigned call numbers **704-576-8987** (referred to herein and in Attachment B as "the Target Cell Phone"), that is in the custody or control of **Verizon**, (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.      The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2024R258**

### I.      Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from July 14, 2024, to September 26, 2024:

        i.   Names (including subscriber names, usernames, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Local and long-distance telephone connection records;

        iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phones, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

II. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, which have been committed by O'Brien FRENCH, Karina BOOKER and other identified and unidentified subjects during the period of May 1, 2024 to December 1, 2024.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.